## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BARTLEY M. MULLEN, JR.,

               Plaintiff,

    v.

ROCHESTER PLAZA ASSOCIATES LLC,

               Defendant.

Case No.   2:21-cv-1603

**FILED ELECTRONICALLY**

## COMPLAINT

COMES NOW, Plaintiff Bartley M. Mullen, Jr. ("Plaintiff"), and alleges as follows:

## INTRODUCTION

1.　　Plaintiff brings this action against Rochester Plaza Associates, LLC ("Defendant"), alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, (the "ADA") and its implementing regulations, in connection with accessibility barriers in the parking lots and paths of travel at 952 State Route 65, East Rochester, Pennsylvania[1] location (the "Facility"), which is owned, operated, and controlled by Defendant.

2.　　The ADA was passed by Congress and signed into law by President H.W. Bush nearly thirty years ago primarily because "individuals with disabilities continually encounter various forms of discrimination, including… the discriminatory effects of architectural, transportation, and communication barriers… [and the] failure to make modifications to existing facilities." 42 U.S.C. § 12101(a)(5).

---

[1] This is the address on file with Beaver County. Google Maps shows the addresses of the stores at this facility as 750 Ohio River Boulevard, Rochester, PA.

3.      The ADA has been the central civil rights law protecting people with disabilities, a group of Americans who are too often overlooked and undervalued. Like other civil rights laws, the purpose of the ADA is clear: the eradication of discrimination. As one legal scholar explained: "A single step in front of a store may not immediately call to mind images of Lester Maddox standing in the door of his restaurant to keep blacks out. But in a crucial respect they are the same, for a step can exclude a person who uses a wheelchair just as surely as a no-blacks-allowed rule can exclude a class of people." Samuel Bagenstos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation*, 54 UCLA L. Rev. 1, 23 (2006).

4.      Plaintiff has a mobility disability and is limited in the major life activity of walking, which has caused him to be dependent upon a wheelchair for mobility.

5.      Plaintiff has visited Defendant's Facility and was denied full and equal access as a result of Defendant's inaccessible parking lots and paths of travel.

6.      Unless Defendant is required to remove the access barriers described below, and required to change its policies and practices so that access barriers do not reoccur at Defendant's Facility, Plaintiff will continue to be denied full and equal access to the Facility as described, and will be deterred from fully using Defendant's Facility.

7.      The ADA expressly contemplates injunctive relief aimed at modification of a policy or practice such as the one Plaintiff seeks in this action.  In relevant part, the ADA states:

> [i]n the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . . .

42 U.S.C. § 12188(a)(2).

8.      Consistent with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

2

a) Defendant remediate all parking and path of travel access barriers at Defendant's Facility, consistent with the ADA;

b) Defendant change its policies and practices so that the parking and path of travel access barriers at Defendant's Facility do not reoccur; and,

c) Plaintiff's representatives shall monitor Defendant's Facility to ensure that the injunctive relief ordered pursuant to Paragraphs 8(a) and 8(b) have been implemented and will remain in place.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

9. The ADA was enacted over a quarter-century ago and is intended to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

10. The ADA broadly protects the rights of individuals with disabilities in employment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life.

11. Title III of the ADA generally prohibits discrimination against individuals with disabilities in the full and equal enjoyment of public accommodations, 42 U.S.C. § 12182(a), and prohibits places of public accommodation, either directly, or through contractual, licensing, or other arrangements, from outright denying individuals with disabilities the opportunity to participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(i), or denying individuals with disabilities the opportunity to fully and equally participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(ii).

12. Title III further prohibits places of public accommodation from utilizing methods of administration that have the effect of discriminating on the basis of a disability. 42 U.S.C. § 12182(b)(1)(D).

13. Title III and its implementing regulations define discrimination to include the following:

a) Failure to remove architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992, 28 CFR § 36.304(a) and 42 U.S.C. § 12182(b)(2)(A)(iv);

b) Failure to design and construct places of public accommodation for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.401 and 42 U.S.C. § 12183(a)(1);

c) For alterations to public accommodations made after January 26, 1992, failure to make alterations so that the altered portions of the public accommodation are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.402 and 42 U.S.C. § 12183(a)(2); and

d) Failure to maintain those features of public accommodations that are required to be readily accessible to and usable by persons with disabilities, 28 C.F.R. § 36.211.

14. The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183. 42 U.S.C. 12188(a)(1).

15. The ADA also provides for specific injunctive relief, which includes the following:

In the case of violations of sections 12182(b)(2)(A)(iv) and section 12183(a) of this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter. Where appropriate, injunctive relief shall also include . . . modification of a policy . . . to the extent required by this subchapter.

42 U.S.C. § 12188(a)(2); 28 C.F.R. § 36.501(b).

## JURISDICTION AND VENUE

16. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188(a)(2).

17.     Plaintiff's claims asserted herein arose in this judicial district, the Facility is located in this judicial district, and Defendant does substantial business in this judicial district.

18.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

<u>**PARTIES**</u>

19.     Plaintiff Bartley M. Mullen, Jr. is and, at all times relevant hereto, was a resident of Beaver, Pennsylvania. Plaintiff has had both legs amputated, and, as a result of this mobility disability, is substantially limited in one or more major life activities, particularly with respect to ambulation. Plaintiff is, therefore, a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101, *et seq*.

20.     Defendant is a limited liability corporation organized under Pennsylvania law. Defendant owns and controls the Facility located at 952 State Route 65, East Rochester, Pennsylvania, a shopping plaza that houses retail and commercial businesses.

21.     Defendant is a public accommodation pursuant to 42 U.S.C. §12181(7).

<u>**FACTUAL ALLEGATIONS**</u>

**I.     Plaintiff Has Been Denied Full and Equal Access to Defendant's Facility.**

22.     Plaintiff has visited Defendant's Facility within the last year, where he experienced unnecessary difficulty and risk due to excessive slopes in a purportedly accessible parking area and because of other ADA accessibility violations as set forth in more detail below.

23.     Despite these risks, Plaintiff plans to return to Defendant's Facility to shop. Furthermore, Plaintiff intends to return to Defendant's Facility to ascertain whether the Facility remains in violation of the ADA.

24.     As a result of Defendant's non-compliance with the ADA, Plaintiff's ability to access and safely use Defendant's Facility has been significantly impeded.

25.     Plaintiff will be deterred from returning to and fully and safely accessing Defendant's Facility, so long as Defendant's Facility remains non-compliant, and so long as Defendant continues to employ the same policies and practices that have led, and in the future will lead, to inaccessibility at Defendant's Facility.

26.     Without injunctive relief, Plaintiff will continue to be unable to fully and safely access Defendant's Facility, which is in violation of his rights under the ADA.

27.     As an individual with a mobility disability who is dependent upon a wheelchair, Plaintiff is directly interested in whether places of public accommodation, like Defendant's Facility, have architectural barriers that impede full accessibility to those accommodations to individuals with mobility-related disabilities.

## II.     Defendant Repeatedly Denies Individuals With Disabilities Full and Equal Access to Defendant's Facility.

28.     Defendant is engaged in the ownership, operation, management, and development of the Facility.

29.     As the owner, operator, and/or manager of the Facility, Defendant employs a centralized policy, practice, and procedure with regard to the design, construction, alteration, maintenance, and operation of the Facility.

30.     To date, Defendant's centralized design, construction, alteration, maintenance, and operational policies and practices have violated the ADA by designing, constructing, and altering the Facility so that it is not readily accessible and usable, by failing to remove architectural barriers, and by failing to maintain and operate the Facility so that the accessible features of Defendant's Facility are maintained.

31.     On Plaintiff's behalf, investigators examined the Facility owned, controlled, and/or operated by Defendant, and found the following violations, which are illustrative of the fact that Defendant implements policies and practices that routinely result in accessibility violations:

a)  Surface slopes up to 5.7% in purportedly accessible parking spaces;

b)  Surface slopes up to 3.9% in an access aisle;

c)  Running slope of 13.4% on a curb ramp connecting accessible parking to the building;

d)  No accessible parking spaces were designated as "Van Accessible"; and

e)  Purportedly accessible parking spaces are not properly designated with a sign displaying the International Symbol of Accessibility.

32.     Defendant's access violations demonstrate that Defendant either employs policies and practices that fail to design, construct, and alter its Facility so that it is readily accessible and usable, and/or that Defendant employs maintenance and operational policies and practices that are unable to maintain accessibility.

33.     Accordingly, Plaintiff seeks an injunction to remove the barriers currently present at Defendant's Facility and an injunction to modify the policies and practices that have created or allowed, and will create and allow, inaccessibility to affect Defendant's Facility.

### CAUSE OF ACTION: VIOLATION OF THE ADA

34.     The allegations contained in the previous paragraphs are incorporated by reference.

35.     Title III of the ADA requires that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

36.     The ADA requires public accommodations to provide individuals with mobility disabilities full and equal enjoyment of the public accommodation's facilities. 42 U.S.C. § 12182(a). The ADA specifically lists access to public accommodations as the first priority that public accommodations should address in ensuring access: "First, a public accommodation should take measures to provide access to a place of public accommodation from public sidewalks, parking, or public transportation. These measures include, for example, installing an entrance ramp, widening entrances, and providing accessible parking spaces." 28. C.F.R. § 36.304.

37.     The ADA requires public accommodations to design and construct facilities to be readily accessible to, and independently usable by, individuals with disabilities – in other words, a facility's access and usability must be "ready" for an individual with a disability. 42 U.S.C. § 12183(a)(1).

38.     When a facility is altered in a manner that affects or could affect its usability, the facility must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).

39.     "Whether a facility is 'readily accessible' is defined, in part, by the ADA Accessibility Guidelines ('ADAAG'), which lay out the technical structural requirements of places of public accommodation." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 779 F.3d 1001, 1006 (9th Cir. 2015).[2] The ADAAG, in relevant part, provides detailed guidance regarding slope requirements for parking spaces and paths of access. *See* 36 C.F.R. § pt. 1191, App. D (the 2010 Standards),

---

[2] The ADAAG is promulgated by the Department of Justice pursuant to 42 U.S.C. § 12186(b). There are two active ADAAGs, the 1991 ADAAG Standards ("1991 Standards") and the 2010 ADAAG Standards ("2010 Standards"). The 1991 Standards appear in 28 C.F.R. § pt. 36, App. D, and are available at: https://www.ada.gov/1991standards/adastd94-archive.pdf. The 2010 Standards appear in 36 C.F.R. § pt. 1191, App. D, and are available at: https://www.ada.go v/regs2010/2010ADAStandards/2010ADAStandards_prt.pdf.

§§ 403.3, 405.2-3, 502.4; 28 C.F.R. § pt. 36, App. D (the 1991 Standards), §§ 4.3.7, 4.6.3, 4.8.2, 4.8.6. These requirements are designed to make it possible for a person with a mobility disability to identify, and then utilize an accessible parking space and independently access a business.

40.     When discriminatory architectural conditions exist within a public accommodation's facility, the ADA directs that a "public accommodation *shall* remove architectural barriers in existing facilities . . . where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense." 28 C.F.R. § 36.304(b) (emphasis added).

41.     The failure to remove architectural barriers, where such removal is readily achievable, is discrimination under the ADA. 42 U.S.C. § 12182(b)(2)(A)(iv).

42.     Public accommodations also must "maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities[.]" 28 C.F.R. § 36.211(a). While isolated, temporary and reasonable disruptions in access are permitted, *see* 28 C.F.R. § 36.211(b), however, allowing inaccessibility to persist beyond a reasonable period of time, allowing accessible features to repeatedly fall out of compliance, or failing to arrange for prompt repair of inaccessible features violate the ADA. *See* 28 C.F.R. pt. 36 app. C § 36.211; Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 73 Fed. Reg. 34508, 34523 (June 17, 2008).

43.     In addition to tangible barrier removal requirements as well as physical design, construction, and alteration requirements, the ADA further prohibits places of public accommodation from utilizing methods of administration that have the effect of discriminating on the basis of a disability. 42 U.S.C. § 12182(b)(1)(D).

44.     The ADA requires reasonable modifications in policies, practices, or procedures when necessary to afford goods, services, facilities, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

45.     The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183. 42 U.S.C. 12188(a)(1).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, prays for:

a.      A declaratory judgment that Defendant is in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant's Facility, as described above, is not fully accessible to, and independently usable by, individuals who use wheelchairs;

b.      A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.501(b) which directs Defendant to: (i) take all steps necessary to remove the architectural barriers described above and to bring its parking Facility into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the parking Facility is fully accessible to, and independently usable by, individuals who use wheelchairs; (ii) that Defendant changes its policies and practices to prevent the reoccurrence of access barriers in its parking Facility post-remediation; and, (iii) that Plaintiff shall monitor Defendant's parking Facility to ensure that the injunctive relief ordered above remains in place.

c.      Payment of costs of suit;

d.      Payment of nominal damages, as the Court deems proper;

e.      Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and,

f.      The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated:  November 5, 2021                    Respectfully Submitted,


                                            /s/ *R. Bruce Carlson*
                                            R. Bruce Carlson
                                            Ian M. Brown
                                            **CARLSON BROWN**
                                            222 Broad St.
                                            PO Box 242
                                            Sewickley, PA 15143
                                            bcarlson@carlsonbrownlaw.com
                                            ibrown@carlsonbrownlaw.com
                                            (412) 322-9243


                                            Nicholas A. Colella
                                            **LYNCH CARPENTER LLP**
                                            1133 Penn Avenue, 5th Floor
                                            Pittsburgh, PA 15222
                                            nickc@lcllp.com
                                            Tel: 412-322-9243
                                            Fax: 412-231-0246

                                            *Counsel for Plaintiff*